1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE CAMERON,<br>                    Plaintiff,<br><br>vs.<br><br>DAVID BUETHER, MICHELLE CRAIG,<br>and the COUNTY OF SAN DIEGO,<br><br>                    Defendants. | **CASE NO: 09-CV-2498-IEG (WMC)**<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS MICHELLE CRAIG AND COUNTY OF SAN DIEGO**<br><br>[Doc. No. 60] |

Presently before the Court is a motion for summary judgment filed by Defendants Michelle Craig and the County of San Diego. [Doc. No. 60.] For the reasons discussed below, the Court **GRANTS** Defendants' motion on all of Plaintiff's claims as they relate to Defendants Craig and the County.

## BACKGROUND

**I.    Factual Background**

Plaintiff Michelle Cameron and Defendant David Buether ("Buether") were previously in a romantic relationship, lived together for nearly four years, and had two children together. [Pl.'s Exs. ISO Opp'n to Defs.' Mot. for Summary Judgment, Dep. of David Buether [hereinafter "Buether Dep."], at 18:12-18:21, 32:22-33:9, 36:14-36:22.] Defendant Buether was and is employed as a Deputy Sheriff with the San Diego County Sheriff's Department. [Buether Dep., at 69:24-72:9.] After

1

moving in with Buether and just before the birth of their first child in October 2006, Plaintiff stopped working to care for their child.  [Pl.'s Opp'n to Defs.' Mot. for Summary Judgment, Ex. B, Decl. of Michelle Cameron [hereinafter "Cameron Decl."], ¶¶ 6, 12.]

When Plaintiff and Buether moved in together, they opened a joint checking account.  Plaintiff did not have any other accounts under her name and believed all their finances were commingled. [Cameron Decl., ¶ 5.]  Plaintiff used the joint checking account to make purchases for herself, their children, and their household.  [See Buether Dep., at 123:19-129:2.]

From approximately 2005 until December 2007, Cameron and Buether lived together in Cameron's apartment.  [See Buether Dep., at 43:1-45:4; Cameron Decl., ¶¶ 2, 5.]  In or about September 2007, Buether purchased a home, titled in his name only, into which he and Plaintiff moved.  [See Cameron Decl., ¶ 4-5; Decl. of Michelle Craig ISO Defs.' Mot. for Summary Judgment [hereinafter "Craig Decl."], ¶ 6.]  Although Buether owned their home, Plaintiff became a co-debtor with him on a home equity line of credit ("HELOC") of $125,000.  [Cameron Decl., ¶8; Buether Dep., at 45:24-47:14.]

Buether possessed a credit card, issued solely to Buether by U.S. Bank.  [Buether Dep., at 117:18-118:13; Craig Decl., ¶ 8.]  Plaintiff claims that she believed the credit card was for their joint use and that Buether gave the credit card number to her for her personal use and household use on numerous occasions.  [Cameron Decl., ¶¶ 6-7.]  Buether maintains that, while he used the card with Plaintiff on at least one occasion during their relationship, he never granted permission for her to use the card without his being present and she did not have permission to use the card once the relationship had ended.  [Buether Dep., at 118:3-121:9; Craig Decl., ¶ 8.]

In June 2007, while Plaintiff and Buether still lived together, Buether registered both Plaintiff and himself with LifeLock, a company that monitors the use of subscribers' personal information to prevent identity-theft.  [Buether Dep., at 113:12-118:19; Cameron Decl., ¶ 11.]

On October 8, 2008, Buether obtained a restraining and kick-out order against Plaintiff, alleging two unreported incidents of domestic violence.  [See Defs.' Mot. for Summary Judgment, Ex. 3, Craig Aff. ISO Search Warrant [hereinafter "Craig Aff. ISO Warrant"], at Bates No. 30; Cameron

Decl. ¶ 16.]   Plaintiff immediately moved out of Buether's home and into a friend's residence after being served with the order.  [See Buether Dep., at 62:13-17; Craig Decl., ¶ 6.]  As Cameron left Buether's home, she asked Buether what she was supposed to do without any belongings; he told her to "do whatever you need to do." [Cameron Decl., ¶ 16.]  A few days before Buether obtained the restraining order, Plaintiff removed $30,000 from their joint home equity line of credit.  [See Craig Decl., at ¶ 6 (stating that Buether told her Cameron withdrew $25,000 one day before she moved out); see also, e.g., Buether Dep., at 49:17-51:4; 152:17-23 (discussing Cameron's withdrawal from the HELOC in the amount of $30,000).]

The children initially stayed with Buether but began splitting time between their two parents after Buether rescinded the restraining order near the end of October 2008.  [See Buether Dep., at 105:22-106:18.]  During that time, Plaintiff and Buether were involved in mediation to resolve custody of the children.  [Cameron Decl., ¶ 19.]

On October 13, 2008, Plaintiff used the U.S. Bank credit card issued solely to Buether to purchase items from Overstock.com, including furniture for herself and her children, jewelry, home decorations, and a refurbished flat-screen television.  [Craig Aff. ISO Warrant, at Bates No. 27-31.] Plaintiff made three purchases, totaling $8,969.38.  [Id. at 30; Craig Decl., at ¶ 3.]

Buether claims that he became aware of the charges to his credit card only after receiving his monthly statement in early November 2008.  [Craig Decl., ¶¶ 1-3.]  On November 14, 2008, Buether filed a complaint against Plaintiff with the San Diego County Sheriff's Department, alleging that she fraudulently used his credit card.  [Id.]  Buether's case was assigned to Defendant Michelle Craig ("Craig"), a detective with the Sheriff's Department.  [Id.]

According to Plaintiff, Buether and Craig attended the law enforcement academy training together, worked together, and maintained a social relationship.  [Cameron Decl., ¶ 14.]  Buether and Craig, however, contend they had only a limited professional relationship with one another before Craig was assigned to investigate Buether's allegations.  [See Craig Decl., ¶ 16; Buether Dep., at 101:10-102:23.]

During the investigation, Craig took statements from Buether and contacted Overstock.com. [Craig Decl., ¶¶ 3-9.] Buether told Craig that, upon receiving the monthly statement for the U.S. Bank credit card, he learned that someone had used his card to make three purchases from Overstock.com, totaling nearly $9,000. He inquired about the charges, and Overstock confirmed that someone had used his card to make the purchases, but Overstock refused to identify the purchaser. [Id. ¶ 3.] Buether stated that he thought Plaintiff, his ex-girlfriend, may have made the purchases, even though she was not on that account or authorized to use it. [Id.] He further reported that, though he and Plaintiff had used the card to make purchases together in the past, he was present each time the card was used, he never gave Plaintiff permission to use the card, and he had possession of the only card issued to that account. [Id.] Buether stated that he did not recall giving Plaintiff the credit card number, but he speculated that she had recorded the card number and was now using it to make purchases. [Id.]

Buether further informed Craig he and Plaintiff lived with each other for the previous four years and had two children together, but they never married. [Id. ¶ 5.] Their relationship deteriorated, according to Buether, after Plaintiff grew violent with him. Plaintiff moved out of his home after Buether obtained a restraining order against plaintiff alleging two instances of domestic violence. [Id. ¶ 6.] Buether later rescinded that order. [Id.]

He made Craig aware that Plaintiff had withdrawn $30,000 from their HELOC. [Id.] Buether visited Plaintiff's new residence shortly after rescinding the restraining order and saw several new items purchased from Overstock. [Id.] Buether believed Plaintiff used the funds she withdrew from the account to furnish her new residence. [Id. ¶¶ 8, 12.]

Finally, Buether told Craig that he confronted Plaintiff about the purchases on his credit card. [Id. ¶ 7.] Plaintiff responded by asking, "Oh, you mean our joint credit card?" Buether replied, "Since when was it our joint credit card?" [Id.] After the exchange, Plaintiff immediately changed the subject. [Id.] Craig interpreted this episode to suggest that Plaintiff knew she did not have permission to use Buether's card. [Defs.' Reply, Supplemental Declaration of Michelle Craig ISO Mot. for Summary Judgment [hereinafter "Supp. Craig Decl."], ¶ 1.]

Craig contacted Overstock.com. and confirmed Plaintiff had made the purchases.  [Craig Decl., ¶ 5.]  Overstock also informed Craig that U.S. Bank had charged back approximately $8,800 from Plaintiff's purchases, making Overstock another victim.  [Id. ¶ 9.]  Overstock desired prosecution on the fraudulent charges.  [Id.]

On December 15, 2008, Craig presented an affidavit in support of a search warrant to a Superior Court judge.  The judge issued the warrant for a search of Plaintiff's home.  [Id. ¶¶ 10-11.]

On December 18, 2008, at 7:00 a.m., a team of between six and ten deputies executed the search warrant.  The deputies entered Plaintiff's residence, confiscated furniture and other goods purchased with Buether's credit card (the items listed in the search warrant), and arrested Plaintiff.  [Id. ¶¶ 14; Cameron Decl., ¶ 18.]  Plaintiff spent approximately five days in jail before she posted bail and was released.  [Cameron Decl., ¶ 18.]  The matter was referred to the District Attorney for prosecution.

Plaintiff was charged with grand theft, identity theft, and credit card fraud.  Buether and Craig testified at a preliminary hearing before the Honorable Harry Powazek on February 23, 2009.  [Defs.' Mot. for Summary Judgment, at 3-4; see also id., Ex. 6, Transcript of Plaintiff's Preliminary Hearing [hereinafter "Trans. Prelim. Hr'g"], at 4, 48.]  The judge heard testimony regarding the professional relationship between Craig and Buether, as well as Plaintiff and Buether's joint checking account, joint HELOC, and Plaintiff's claims of prior permitted use of Buether's credit card.  [Id. at 4, 11, 15-16, 45, 48.]  At the hearing's conclusion, Judge Powazek found probable cause that "the offenses listed in the complaint—the three counts—have been proven and committed.  And there is sufficient cause to believe that [Plaintiff] is guilty thereof."  [Id. at 50-51.]

Plaintiff was bound over for trial.  After the preliminary hearing, Plaintiff's case was assigned to a second Deputy District Attorney, Katherine A. Flaherty.  Ms. Flaherty elected to dismiss the charges against Plaintiff.  [See Pl.'s Notice of Lodging Exs. ISO Opp'n to Mot. for Summary Judgment, Doc. No. 63-6, Deposition of Katherine Flaherty, at 26:22-29:14.]

## II.   Relevant Procedural History

Plaintiff alleges a Section 1983 claim against Buether and Craig and state law causes of action for negligence, false arrest, and violation of California Civil Code § 52.1 against all Defendants. [Third Amended Complaint ("TAC"), Doc. No. 36.]  Defendants Craig and the County (the "County

1   Defendants") filed a motion to dismiss Plaintiff's negligence claim, [Doc. No. 39], which the Court

2   granted with prejudice.  [Doc. No. 48.]  The County Defendants now move for summary judgment on

3   Plaintiff's remaining causes of action as they relate to Defendants Craig and the County. [Doc. No.

4   60.]

5   ## LEGAL STANDARD

6        "The court shall grant summary judgment if the movant shows that there is no genuine dispute

7   as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

8   56(a).  A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to

9   return a verdict for the non-moving party.  Miller v. Glenn Miller Prod., Inc., 454 F.3d 975, 987 (9th

10  Cir. 2006).

11       In order to prevail, a party moving for summary judgment must show the absence of a genuine

12  issue of material fact with respect to an essential element of the nonmoving party's claim, or to a

13  defense on which the nonmoving party will bear the burden of persuasion at trial.  Nissan Fire &

14  Marine Ins. Co. v. Fritz Cos. Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).  When the nonmoving party

15  would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment

16  by simply pointing out to the Court an absence of evidence from the nonmoving party.  Miller, 454

17  F.3d at 987.  "The moving party need not disprove the other party's case." Id.

18       Once the movant has made that showing, the burden shifts to the opposing party to produce

19  "evidence that it significantly probative or more than 'merely colorable' that a genuine issue of

20  material fact exists for trial." LVRC Holdings LLC v. Brekka, 581 F.3d 1127, 1137 (9th Cir. 2009)

21  (citing FTC v. Gill, 265 F.3d 944, 954 (9th Cir. 2001)); see also Miller, 454 F.3d at 988 ("[T]he non-

22  moving party must come forward with more than 'the mere existence of a scintilla of evidence.'")

23  (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

24       The Court must review the record as a whole and draw all reasonable inferences in favor of the

25  nonmoving party.  Hernandez v. Spacelabs Med. Inc., 343 F.3d 736, 738 (9th Cir. 2000).  However,

26  unsupported conjecture or conclusory statements are insufficient to defeat summary judgment.  Id.;

27  Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008).  "Thus, '[w]here the record taken

28  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

1   issue for trial.'" Miller, 454 F.3d at 988 (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

2   Corp., 475 U.S. 574, 587 (1986)).

3                                                **DISCUSSION**

4           Defendants Craig and the County move for summary judgment on Plaintiff's claim under 42

5   U.S.C. § 1983 and each of her state law claims.  Nearly all of Plaintiff's claims turn on her allegation

6   that Defendant Craig obtained a search warrant with an affidavit that omitted material exculpatory

7   information.  As a result, Plaintiff alleges, the search warrant issued without probable cause and the

8   subsequent search of Plaintiff's residence violated her Fourth Amendment rights.[1]  Plaintiff also

9   appears to claim the manner in which Craig and the Deputy Sheriffs under her supervision conducted

10  the search violated her constitutional rights.

11          Plaintiff further alleges that, because there was no probable cause to search her residence, any

12  evidence seized during that search should not have been used to support probable cause to arrest

13  Plaintiff.  Thus, Plaintiff alleges that she was arrested without probable cause, also in violation of the

14  Fourth Amendment.

15  **I.      Plaintiff's Claims Under 42 U.S.C. § 1983**

16          Plaintiff alleges Craig violated her Fourth Amendment rights and seeks damages pursuant to 42

17  U.S.C. § 1983.  The County Defendants argue summary judgment is appropriate because Plaintiff has

18  failed to provide evidence tending to show a constitutional violation for which Craig should be

19  stripped of her qualified immunity from a civil rights lawsuit.

20          Qualified immunity is "'an immunity from suit rather than a mere defense to liability.'"

21  Lombardi v. City of El Cajon, 117 F.3d 1117, 1122 (9th Cir. 1997) (quoting Hunter v. Bryant, 502

22  U.S. 224, 227 (1991)).  Qualified immunity shields an officer from personal liability when she

23

24  _____

25          [1] Plaintiff also argues the search of her residence violated her substantive due process rights
    under the Fourteenth Amendment.  Where a specific constitutional amendment governs governmental
26  conduct, claims arising out of that conduct must be analyzed under the standards appropriate to that
    specific amendment, not under the Fourteenth Amendment's rubric of substantive due process.
27  Graham v. Connor, 490 U.S. 386, 394 (1989).  The Fourth Amendment governs conduct related to
    searches and seizures; accordingly Plaintiff cannot establish a substantive due process violation.  See
28  id.; Morris v. State Bar of Cal., 2010 WL 2353528, at *6 (E.D. Cal. June 9, 2010).

reasonably believes her conduct complies with the law.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 823 (2009).

Establishing whether a defendant is entitled to qualified immunity requires a two-part analysis. First, the Court determines "whether the plaintiff has shown that the action complained of constituted a violation of his or her constitutional rights.  <u>Butler v. Elle</u>, 281 F.3d 1014, 1021 (9th Cir. 2002).   To defeat qualified immunity at summary judgment, the plaintiff bears the burden of asserting a violation of her constitutional rights.  <u>Ram v. Rubin</u>, 118 F.3d 1306, 1310 (9th Cir. 1997).

If the plaintiff satisfies the first step, the Court then decides "(1) whether the violated right was clearly established, and (2) whether a reasonable public official was could have believed that the particular conduct at issue was lawful."  <u>Butler</u>, 281 F.3d at 1021.  "This inquiry turns on the 'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  <u>Pearson</u>, 129 S. Ct. at 822 (quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999)); <u>see</u> <u>Rodis v. City and County of San Francisco</u>, 558 F.3d 964, 968-69 (9th Cir. 2009).

a.  <u>*Plaintiff's § 1983 Claim for Omissions from the Affidavit in Support of the Search Warrant*</u>

Plaintiff argues Craig omitted material information from her affidavit in support of a warrant to search Plaintiff's residence, and the search warrant that issued was therefore unsupported by probable cause.  As a result, Plaintiff argues the search of her residence violated her Fourth Amendment rights.

The County Defendants argue, first, Plaintiff suffered no constitutional deprivation because probable cause supported the search warrant, and, second, even if Plaintiff did suffer such a deprivation, Craig is entitled to qualified immunity.

In cases alleging judicial deception in the procurement of a search warrant, establishing a violation of the Fourth Amendment under the first prong of the qualified immunity inquiry is itself a two-part test.  A plaintiff "must make (1) a 'substantial showing' of deliberate falsehood or reckless disregard for the truth, and (2) that but for the dishonesty, the challenged action would not have occurred."  <u>Butler v. Elle</u>, 281 F.3d 1014, 1024 (9th Cir. 2002) (quoting <u>Liston v. County of Riverside</u>, 120 F.3d 965, 972-75 (9th Cir. 1997)).  Where the plaintiff has made a "substantial showing" that the officer intentionally or recklessly omitted the information, "the question of intent or recklessness is a

1    'factual determination for the trier of fact.'"  Liston, 120 F.3d at 974 (quoting Hervey, 65 F.3d at 791);

2    Butler, 281 F.3d at 1026 ("Materiality is for the court, state of mind is for the jury").

3              With regard to the second prong of the qualified immunity analysis, where the plaintiff has

4    made a substantial showing of judicial deception, the issue of qualified immunity is "effectively

5    intertwine[d]" with the substantive Fourth Amendment determination.  Butler, 281 F.3d at 1024.  An

6    officer cannot be said to have acted in an objectively reasonable manner so as to be entitled to qualified

7    immunity where the officer has made *obviously* false misrepresentations or omitted information which

8    was *obviously* relevant.  Lombardi, 117 F.3d at 1126  ("In cases of 'outrageous' conduct such as

9    Hervey,[2] where probable cause is clearly lacking without the false statements, the officer cannot be

10   said to have acted in an objectively reasonable manner and the shield of qualified immunity is lost.")

11   (internal quotation marks and citations omitted).  Where, however, the "materiality may not have been

12   clear at the time the officer decided what to include in, and what to exclude from, the affidavit," or

13   "when it is not plain that a neutral magistrate would not have issued the warrant, the shield of qualified

14   immunity should not be lost, because a reasonably well-trained officer would not have known that the

15   misstatement or omission would have any effect on issuing the warrant."  Id. (internal quotation marks

16   and citations omitted); see also id. at 1119 (it is "not objectively unreasonable to omit facts that

17   weren't plainly material when the warrant application was made").  Thus, if the alleged omissions

18   were obviously material, the question of "whether a reasonable officer should have known that he

19   acted in violation of a plaintiff's constitutional rights" depends upon the answer to the question of

20   whether the defendant acted dishonestly or recklessly.  Butler, 281 F.3d at 1024; Liston, 120 F.3d at

21   974.

22             Plaintiff offers two theories in support of her material omissions claim.  First, Plaintiff alleges

23   that Defendants Buether and Craig conspired to aid Buether in his then-ongoing civil dispute regarding

24   custody of their children and various joint assets.  In furtherance of that conspiracy, Craig knowingly

25

26   _____

27   [2] The Court in Lombardi highlighted that in Hervey, "[t]he officer fabricated perceptions of
     sight, smell and sound, which was 'unforgivable'" and "[w]ithout the falsely included facts, all that
     remained was unproven, uncorroborated and unreliable informant information which no neutral
28   magistrate could possibly have credited."  117 F.3d at 1126.

submitted a false and misleading affidavit to secure a search warrant.  Alternatively, Plaintiff argues that Craig acted with reckless disregard for the truth by (a) omitting obviously material information from her affidavit and (b) conducting an inadequate investigation into Buether's claims, thereby failing to learn certain material information which she then omitted from her affidavit.

### 1.  Alleged Conspiracy

Plaintiff argues the following in support of her conspiracy allegation: (1) Buether and Craig were longtime friends as well as professional colleagues, [Cameron Decl., ¶ 14]; (2) Craig was assigned to the case rather than a deputy who did not know Buether or a deputy in the Sheriff Department's Fraud Unit, [Pl.'s Opp'n to Defs.' Mot. for Summary Judgment, at 9]; (3) Craig omitted this affidavit from her affidavit, [id. at 6-7]; (4) approximately two weeks before the warrant issued, Craig asked Buether whether he could be available "at any time" to pick-up his children in the event that a warrant issued and a search and arrest took place, [id. at 7]; and (5) upon entering Plaintiff's residence to effect the search, Craig phoned Buether and asked him to pick-up his children.  [Id.]

Aside from her own declaration, Plaintiff has offered no evidence of conspiracy.  Conclusory allegations of a conspiracy cannot support a § 1983 claim.  Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989); see also Spreewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (the Court need not "accept as true allegations that are merely conclusory, deductions of fact, or unreasonable inferences").

By contrast, Defendants have offered evidence demonstrating the absence of a conspiracy. First, both Buether and Craig stated in their respective depositions that they are merely professional colleagues and that they do not socialize outside of work.[3]  [See Buether Dep., at 102:5-23; Craig Dep., at 86:19-87:2.]  Moreover, despite claiming that Buether and Craig were longtime social friends, during the four years she lived with Buether, Plaintiff admits that she never met or spoke to Craig, and she only saw Craig once or twice from a distance at Deputy Sheriffs' functions.  [Cameron Decl., ¶ 14.]

---

[3] Craig's testimony during her deposition was consistent with her testimony nearly two years earlier at Plaintiff's preliminary hearing.  [Defs.' Mot., Ex. 6, at 123:17-124:28 (Craig's testimony at the preliminary hearing in Plaintiff's criminal case).]

Second, Craig testified that she did not know Buether had filed a criminal complaint until she was assigned the case, and that Sergeant Bulow, then-supervising her unit (now deceased), assigned the case to her randomly.  [Craig Decl., ¶ 1; Pl.'s Notice of Lodging Exs. ISO Opp'n to Mot. for Summary Judgment, Doc. No. 63-6, Deposition of Michelle Craig, at 14:21-15:15 [hereinafter "Craig Dep."].]  Plaintiff has neither alleged nor offered any facts suggesting that Sergeant Bulow knew or was friendly with Buether, or that he purposely assigned Buether's case to Craig.  Craig stated that the Fraud Unit only takes complex fraud cases involving multiple transactions and a geographic scope spanning multiple jurisdictions, often with international implications.  [Id. at 12:24-14:14.]

Third, Craig explained that she did not include information in her affidavit she did not believe to be relevant, or of which she was unaware.  Craig did not include specific details of Plaintiff's and Buether's financial commingling because she thought that the nature of their former relationship implied some financial commingling.  Craig did not think additional information was relevant to the question of whether, after the couple separated, Plaintiff used a credit card issued solely to Buether without his permission.  [Craig Decl., ¶ 13; Craig Dep., at 93:20-95:16.]

Craig did not interview Plaintiff before executing the search warrant, and she was unaware at the time she prepared her affidavit of Plaintiff's claimed prior use of the card.  In investigating cases involving allegations of illegally obtained property, Craig usually does not interview the suspect before seeking a search warrant.  [Craig Dep., at 63:1-16.]

Plaintiff has failed to offer evidence tending to show Craig conspired with Buether or intentionally omitted relevant information from her affidavit in support of a search warrant.

### 2.  Alleged Omissions

Plaintiff argues Craig recklessly disregarded the truth by submitting an affidavit that omitted details of the extent of financial commingling between Plaintiff and Buether and information regarding the professional relationship between Buether and Craig.  None of the omissions Plaintiff identifies, however, are material.

To find materiality, the Court must determine whether Craig's affidavit, if it had included the omitted information, would have obviously failed to establish probable cause for the warrant to issue.  Lombardi, 117 F.3d at 1126.  A warrant should issue when it appears that, under the totality of the

circumstances, there is probable cause to believe that contraband or evidence is located in a particular place.  Id.; Greenstreet v. Cnty. of San Bernardino, 41 F.3d 1306, 1309 (9th Cir. 1994) ("The facts presented [to the magistrate] must be sufficient to justify a conclusion that the property which is the object of the search is probably on the premises to be searched at the time the warrant is issued."). Probable cause means a "'fair probability,' not certainty or even a preponderance of the evidence." United States v. Gourde, 440 F.3d 1065, 1069 (9th Cir. 2006).

Craig's affidavit provided the following information: (1) Buether and Plaintiff dated and lived with each other for approximately four years and had two children together; (2) approximately two months prior to Craig submitting the affidavit, Buether obtained a restraining and kick-out order against Plaintiff, alleging two previously-unreported incidents of domestic violence; (3) approximately four days after moving out of the residence pursuant to the restraining order, Plaintiff used a credit card issued to Buether to make three purchases from Overstock.com for items totaling nearly $9,000; (4) Buether, the purported victim and sole person authorized to use the credit card, claimed that he never granted Plaintiff permission to use his card without his being present, and that he did not grant permission for her to make the purchases in question; (5) Overstock.com provided records confirming that the Plaintiff purchased nearly $9,000 worth of goods using Buether's credit card and that those goods were shipped to Plaintiff's then-current address; (6) Craig had shown photos of possible items purchased to Buether, and he stated that, during a visit three or four weeks prior to Craig's filing of the affidavit, he saw at least some of those goods at Plaintiff's residence, and Plaintiff stated to him that she had purchased numerous items from Overstock.com; (7) Buether stated that he thought Plaintiff had used the goods purchased to furnish her residence.

### a.   Financial Commingling

Plaintiff argues that Craig's affidavit should have noted that, during the time they lived together, Plaintiff and Buether jointly financed an automobile, secured a joint HELOC for $125,000, and opened a joint checking account.  Plaintiff also argues that Craig's affidavit should have stated that, before seeking a search warrant, Craig did not contact Plaintiff or ask her about her prior use of the relevant card.  Had Craig contacted Plaintiff, she would have learned—and should have included in the affidavit—that Plaintiff claims (a) she used the card to make approximately 123 purchases—

including with Overstock.com—while living with Buether, with his permission and without his being present, and (b) she thought she had permission to continue using the card.

Plaintiff argues those facts are material because they suggest Plaintiff believed she had permission to use Buether's credit card.  If Plaintiff had permission to use the card, then she could have established that no crime had occurred.

The alleged omissions do not negate the facts in the affidavit that established probable cause. First, it does not follow from the fact that Plaintiff and Buether commingled some of their finances that Plaintiff enjoyed permission or access to all of Buether's accounts.  To the contrary, detailed information about the couple's financial commingling would have shown that Plaintiff had clear access to some accounts because they were *in her name* as well as Buether's.  But the card in question was opened and maintained solely in Buether's name.  [Craig Decl., ¶¶ 3, 8; Buether Dep., at 117:18-118:16.]

Second, Craig's affidavit stated that Plaintiff had lived for four years and had two children with Buether, and that Plaintiff had only recently moved from Buether's home.  Some degree of financial commingling is implicit in such a relationship.  Even if Craig's affidavit had included explicit and extensive descriptions of Plaintiff and Buether's financial commingling, such facts would not establish that Plaintiff had permission to use a credit card issued solely to Buether.

Third, even if the affidavit included facts tending to show that, at some point during her relationship with Buether, Plaintiff had permission to use all of his credit cards, such facts would not establish that she retained such permission after their relationship ended and after Defendant Buether had secured a restraining and kick-out order against Plaintiff with allegations of domestic violence.

Had Craig's affidavit included the information Plaintiff identifies related to financial commingling, it would still have established probable cause for a search warrant.  See Gourde, 440 F.3d at 1069.  The omissions were therefore immaterial.  Lombardi, 117 F.3d at 1126.

Plaintiff argues that, had Craig interviewed Plaintiff before seeking a warrant, she would have learned of Plaintiff's claim that no crime occurred because had Buether's permission to use the card. Plaintiff thus argues Craig conducted an inadequate investigation.  [See Pl.'s Opp'n, Doc. No. 63, at 13-15.]  Craig had no obligation to interview the suspect in a criminal investigation before seeking a

search warrant; she needed only to uncover enough information to establish a "fair probability that evidence of a crime would be found." Gourde, 440 F.3d at 1069. Craig's investigation, described below, was adequate. Cf. Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995) (discussing the standard for probable cause to arrest without a warrant, and rejecting the "broad proposition that a police officer who interviews witnesses and concludes probable cause exists to arrest violates the Fourth Amendment by failing to investigate the defendant's alleged alibi witnesses").

The information related to Plaintiff and Buether's financial commingling was immaterial, and Craig had no duty to interview Plaintiff before seeking a search warrant. Thus, Craig did not act with a reckless disregard for the truth by excluding from her affidavit the information Plaintiff identifies.

b.   Buether's and Craig's Professional Relationship

Plaintiff argues that Craig's affidavit should have noted that (a) Craig and Buether are both Deputy Sheriffs assigned to the same substation (San Marcos); (b) they attended the "academy" together approximately thirteen years before this incident; and (c) several years before this incident, they worked on the same shift, though not as partners or in the same patrol vehicle, for approximately three years.

It is possible that a judge might have interpreted information that Craig and Buether were professional colleagues to suggest bias toward Buether tainted Craig's investigation. On the other hand, including information about Buether's thirteen years of service as a Deputy Sheriff or about the three years during which Buether and Craig worked separately, but on the same shift, might have bolstered the credibility of Buether's claims.

However, Craig's affidavit did not rely solely on Buether's statements. Craig also obtained information from the loss-prevention manager at Overstock.com, confirming that Plaintiff used Buether's card to make the relevant purchases, that the purchased items were sent to Plaintiff's then-current residence, and that the credit issuer had charged Overstock back for the purchases. [Craig Decl., ¶ 9.] Overstock.com, a second victim, desired prosecution on the fraudulent charges. [Id.]

Information to the effect that (1) Plaintiff, the suspect in a criminal investigation for fraudulent use of another's credit card, claimed to have had permission to use that card, and (2) Buether, the purported victim, was a 13-year veteran of the San Diego County Sheriff's Department, with whom the

14

investigating officer had worked in the past, would not have undermined the showing of probable cause in Craig's affidavit.  Because the omissions about which Plaintiff complains were not "plainly material when the warrant application was made," Craig is entitled to qualified immunity.  Lombardi, 117 F.3d at 1126.  Even if the omissions were material, Craig conducted a sufficient investigation before submitting her affidavit.

> ### 3.   Plaintiff Has Not Established a Constitutional Deprivation

In sum, Plaintiff has not made a substantial showing of deliberate falsehood or reckless disregard for the truth, or that the omissions of which Plaintiff complains were plainly material.  Thus, the search warrant issued with probable cause and Plaintiff has failed to establish that the search of her residence violated her Fourth Amendment rights.  See Butler, 281 F.3d at 1024; Lombardi, 117 F.3d at 1126.  Accordingly, Craig is entitled to qualified immunity on this claim.  Seigert, 500 U.S. at 229-30.  Additionally, because no constitutional deprivation occurred, the County is also entitled to summary judgment on this claim.

> #### b.   *Plaintiff's Possible § 1983 Claims Related to the Execution of the Search Warrant*

It is unclear from Plaintiff's complaint or her opposition to the present motion for summary judgment whether Plaintiff is attempting to claim that Craig and the Deputy Sheriffs operating under her direction executed the search warrant in a manner that violated Plaintiff's Fourth Amendment rights.  [See TAC, ¶ 20 (describing a "SWAT-like raid"); id. ¶¶ 26-31 (setting out Plaintiff's § 1983 claims without mention of the execution of the warrant); see also Pl.'s Opp'n, at 7, 10-11 (again describing a "SWAT-like raid" in the context of alleged deprivations of Plaintiff's constitutional rights).]

The Court must analyze claims against law enforcement officers for excessive force under the Fourth Amendment's "objective reasonableness" standard.  Graham v. Connor, 490 U.S. 386, 388, 395 (1989).  "The Fourth Amendment says nothing specific about formalities in exercising a warrant's authorization."  United States v. Banks, 540 U.S. 31, 35 (2003).  Reasonableness in executing a search warrant is a "function of the facts of cases so various that no template is likely to produce sounder results than examining the totality of circumstances in a given case."  Id. at 36.  The Court must determine the reasonableness of the manner in which a search is executed from the perspective of a

reasonable officer on the scene.  See Franklin v. Foxworth, 31 F.3d 873, 877 (9th Cir. 1994) (citing Graham, 490 U.S. at 387).

To determine reasonableness, the Court must consider the severity of the crime at issue, whether the suspect poses an immediate threat the safety of the officers or others, and whether the suspect is actively resisting arrest.  Chew v. Gates, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994).  The Court should also consider whether a warrant was used, the number of potential arrestees or officers involved, and whether other potentially dangerous circumstances existed at the time of the arrest.  See id. at 1440 n.5.

Plaintiff intimates the execution of the warrant was unreasonable because (a) between six and ten armed officers entered Plaintiff's residence; (b) Plaintiff was handcuffed; (c) deputies confiscated "Cameron's and her children's furniture, beds, clothes, and virtually everything else in the apartment." [Pl.'s Opp'n, at 7.]

In her deposition, Plaintiff described the execution of the warrant as follows: (1) deputies knocked on the door at 7:00 a.m. and announced, "Sheriff's Department"; (2) one of Plaintiff's roommates opened the door, and the armed deputies entered and began to secure those inside; (3) deputies had guns drawn as they secured the residence; (4) as the deputies approached Plaintiff, she was shouting and raising her arms; (5) when the deputies reached Plaintiff in a narrow hallway, she was jostled but did not fall; (6) Plaintiff was handcuffed, but did not complain that the cuffs were too tight; (7) no one pointed a weapon at Plaintiff after she was handcuffed; (8) once handcuffed, Plaintiff was seated on the couch with the people present in the residence; (9) Plaintiff's approximately one-year-old child remained in his crib, and her two-year old was unrestrained and in the room where Plaintiff sat on the couch; (10) upon entering the residence, Craig phoned Buether so that he could pick-up the children, which he did shortly thereafter; (11) meanwhile, the deputies seized everything on their inventory of items fraudulently purchased from Overstock.com; (12) Plaintiff was escorted to another room and interviewed, and then escorted to a patrol car and taken to jail.  [See Cameron Dep., at 219-255.]  Plaintiff did not complain of any injuries, though she noted that the handcuffs left "hickey-like" marks on her wrists that went away shortly.  [Id. at 229:18-230:4.]

Prior to executing the warrant, Craig investigated Plaintiff's background and the backgrounds of Plaintiff's several roommates.  None of the background checks raised any safety concerns; however, Craig could not obtain any information regarding one of the roommates.  That lack of information raised the level of risk involved in executing the warrant.    [See Craig Dep., at 63:17-68:19.]

The deputies were armed when they entered the residence because they had no information about one of the roommates and they could not be sure whether or how many unknown and unexpected people would be present.  Under the circumstances, the deputies took reasonable steps to ensure their own safety.  See Martin v. City of Oceanside, 205 F. Supp. 2d 1142, 1153-54 (S.D. Cal. 2002) (noting that "courts are counseled to 'allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'") (quoting Jackson v. City of Bremerton, 268 F.3d 646, (9th Cir. 2001)) (alterations in original).

Plaintiff claims that, as she yelled and raised her arms in a narrow hallway, the deputies approached her with guns drawn, shouting instructions.  [Id. at 220:13-230:4.224:12.]  Plaintiff describes some commotion and physical contact as deputies handcuffed her and escorted her to the couch, but alleges no improper conduct or related injuries.  [Id. at 224:13-230:7.]  Moreover, Plaintiff does not allege that Craig pointed a weapon at or used any force against her.  [Id. at 247:10-12; see also Craig Decl., ¶ 15]; Bryan v. Las Vegas Metropolitan Police Dept., 349 Fed. Appx. 132, 133-134 (9th Cir. 2009) (affirming summary judgment in favor of officers who were merely present at the time of, but not directly involved in, the allegedly unconstitutional use of force).   Under these circumstances, Plaintiff has failed to show the deputies used excessive force during the search.  See Martin, 205 F. Supp. 2d at 1153-54 (finding no Fourth Amendment violation where officers pointed their guns as they initially came upon an unknown man and woman in a home while effecting a search warrant, but holstered the weapons once they ascertained their identities and the uncertainty had passed).

Once the residents and visitors were secure, the deputies simply seized the items listed in the search warrant.  Reasonable detention during a search does not violate the Fourth Amendment,

1  Michigan v. Summers, 452 692, 702-03 (1981); nor does seizing the items listed for seizure on the

2  search warrant.  See Zeltser v. City of Oakland, 325 F.3d 1141, at 1143-44 (9th Cir. 2003).

3        Under the circumstances, the manner in which the officers executed the search warrant

4  reasonable and did not violate the Fourth Amendment.  Thus, if Plaintiff has raised a § 1983 claim for

5  excessive force, Craig is entitled to qualified immunity.  Because no constitutional deprivation

6  occurred, the County is also entitled to summary judgment on this claim.

7        c.  *Plaintiff's § 1983 Claim for Wrongful Arrest*

8        Plaintiff claims she was subjected to a wrongful arrest.  She argues that because the search

9  warrant lacked probable cause, the evidence seized during the search could not support probable cause

10  to arrest.

11        The Fourth Amendment requires an officer to have probable cause to effect a warrantless

12  arrest.  United States v. Brobst, 558 F.3d 982, 997 (9th Cir. 2009).  "Probable cause requires more than

13  bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a

14  showing that the officer's belief is more likely true than false."  Id. (citing Brinegar v. United States,

15  338 U.S. 160, 175 (1949)).  Once an officer serving a valid search warrant discovers incriminating

16  evidence, "that evidence can provide probable cause for a warrantless arrest."  Id. (citing United States

17  v. Moreno, 891 F.2d 247, 249 (9th Cir. 1989)).

18        As discussed above, there was probable cause to issue the search warrant.  While executing the

19  valid search warrant, Craig found incriminating evidence in Plaintiff's residence.  That evidence

20  provided the necessary probable cause to arrest Plaintiff.  Thus, Plaintiff's arrest was lawful

21        Accordingly, Craig in entitled to qualified immunity as to Plaintiff's § 1983 wrongful arrest

22  claim.  The County is also entitled to summary judgment on this claim because Plaintiff's

23  constitutional rights were not violated.

24        d.  *Plaintiff's § 1983 Claim for Malicious Prosecution*

25        Plaintiff claims Craig's search and arrest of Plaintiff without probable cause subjected her to an

26  abusive prosecution in violation of her Due Process rights under the Fourteenth Amendment.  [See

27  TAC, ¶¶ 27-29.]  This claim also rests on Plaintiff's meritless claim that the search warrant issued

28  without probable cause.  Therefore, this claim also fails.

Additionally, in the Ninth Circuit, malicious prosecution claims are generally not cognizable under § 1983 if the relevant state judicial system provides a remedy.[4]  Usher v. City of Los Angeles, 828 F.2d 556, 561-62 (9th Cir. 1987).  California provides a remedy for malicious prosecution.  Id. Thus, Plaintiff's allegations of malicious prosecution under § 1983 are not cognizable.  Even assuming her allegations were cognizable, Plaintiff's claim could not survive summary judgment.

Malicious prosecution under § 1983 incorporates the elements of the cause of action under the relevant state's law.  Awabdy v. City of Adelanto, 368 F.3d 1062, 1066-68 (9th Cir. 2004).  Under California law, a claim for malicious prosecution requires a plaintiff to show that the "prior action (1) was commenced by or at the direction of the defendant and pursued to a legal termination in plaintiff's favor; (2) was brought without probable cause; and (3) was initiated with malice."  Sagonowsky v. More, 64 Cal. App. 122, 128 (1998).

Regarding the first element's requirement that the prosecution be commenced at the defendant's direction, generally, "the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." Awabdy, 368 F.3d at 1067.  Absent a showing that the investigating officers exerted improper pressure on or knowingly presented false information to the prosecuting attorney, the prosecuting attorney's exercise of independent judgment in deciding to prosecute a case breaks the causal chain for abusive prosecution claims against the officers.  Id.; Beck v. City of Upland, 527 F.3d 853, 864 (9th Cir. 2008).

In this case, the Deputy District Attorney had all the information Plaintiff claims Craig improperly omitted from her affidavit, and he decided to pursue the preliminary hearing.  Plaintiff has neither alleged nor offered any evidence to support the notion that any Defendant improperly pressured the attorney to prosecute the case against Plaintiff.  Thus, even if her malicious prosecution claim were cognizable, Plaintiff has failed to satisfy the first element of that claim.

---

[4] Where, however, a plaintiff alleges he was wrongfully prosecuted for the purpose of depriving him of a specific constitutional right—equal protection under the Fourteenth Amendment, for example—he may have a cognizable claim under § 1983.  See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066-67 (9th Cir. 2004).

Plaintiff has also failed satisfy the second element, that the prosecution was pursued without probable cause.  As discussed above, the search warrant issued with probable cause.  While executing the search warrant, officers found incriminating evidence that, coupled with previously-known information, provided probable cause to arrest Plaintiff.  The Deputy District Attorney initially assigned to Plaintiff's case brought the charges and evidence against Plaintiff before Judge Harry Powazek at Plaintiff's preliminary hearing.  [See Trans. Prelim. Hr'g, at 4, 48.]  Judge Powazek heard testimony regarding the information Plaintiff contends should have negated probable cause to search or arrest; yet Judge Powazek still found probable cause to try Plaintiff.[5]  [Id. at 50-51.]

The third element, malice, "relates to the subjective intent or purpose with which the defendant acted in initiating the prior action."  Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863 (1989)) (alterations omitted).  "[W]here malice must be shown, only 'other, additional evidence' apart from a lack of probable cause, is sufficient . . . 'a lack of probable cause, standing alone, does not support an inference of malice.'"  Id. (quoting Swat-Fame, Inc. v. Goldstein, 101 Cal. App. 4th 613, 634 (2002)).  Normally a fact for the jury to determine, summary judgment for lack of malice is "nonetheless appropriate when there is no evidence from which a reasonable fact finder could conclude that the defendant pursued the underlying action with malice."  Id.

Plaintiff's only allegation against Craig that can be construed as malice is that she conspired with Buether against Plaintiff.  As discussed above, however, Plaintiff has not offered sufficient evidence for a reasonable finder of fact to conclude that Craig participated in any such conspiracy.  Thus, Plaintiff has not made a sufficient showing of malice to maintain a claim for malicious prosecution.

---

[5] Plaintiff makes much of the fact that the Deputy District Attorney assigned to her case after the preliminary hearing, Katherine A. Flaherty, elected to dismiss the criminal case against Plaintiff.  But merely pointing to Ms. Flaherty's decision to drop the case against Plaintiff does not establish that the prosecution was initially brought without probable cause.  Indeed, Ms. Flaherty testified during her deposition that she decided to dismiss the case not for concerns about where jurors' sympathies may lie, not for a lack of probable cause: "this isn't a question of whether it happened; it's a question of perception . . . and sympathy of the jurors."  Pl.'s Exs. ISO Opp'n to Defs.' Mot. for Summary Judgment, Dep. of Katherine A. Flaherty, at 26:2-6.]

Accordingly, the Court **GRANTS** summary judgment on this claim as to the County Defendants.

### e. *Municipal Liability Under § 1983*

Section 1983 provides a cause of action against any "person" who, under color of law, deprives any other person of rights, privileges, or immunities secured by the Constitution or laws of the United States. The term "person" includes municipalities, such as the County. Ulrich v. City and Cnty. of San Francisco, 308 F.3d 968, 984-85 (9th Cir. 2009) (citing Monell v. Dep't of Soc. Serv. of N.Y., 436 U.S. 658, 694 (1978)). A municipality cannot, however, "be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. A municipality may only face liability under § 1983 "where the municipality itself causes the constitutional violation through 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Ulrich, 308 F.3d at 985 (quoting Monell, 436 U.S. at 694).

Plaintiff has neither claimed nor made any showing that her alleged constitutional deprivations resulted from any policy or custom of the County. Therefore, Plaintiff has not made the required showing to establish municipal liability under § 1983.

## II.    **Plaintiff's Claim for False Arrest Under California Law**

Plaintiff again argues the search warrant was not supported by probable cause, and, therefore, Plaintiff's arrest was unlawful under California law. As discussed above, probable cause supported the search warrant and the evidence discovered when officers executed the search warrant provided probable cause to arrest Plaintiff. Plaintiff's arrest was lawful. Accordingly, the Court **GRANTS** summary judgment on this claim as it relates to the County Defendants. See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 920 (9th Cir. 2001) (noting that, under California law, "no cause of action shall arise against, any peace officer . . . , acting within the scope of his or her authority, for false arrest or false imprisonment arising out of any arrest *when . . . [t]he arrest was lawful*") (emphasis added).

## III.    **Plaintiff's Claim Under California Civil Code § 52.1**

California Civil Code § 52.1 permits an individual to bring civil action for interference with her rights under the United States or California Constitutions by threats, intimidation, or coercion. Venegas v. Cnty. of L.A., 153 Cal. App. 4th 1230, 1239 (2007) ("Venegas IV"). "[S]ection 52.1 does not extend to all ordinary tort actions . . . [but] its provisions are limited to threats, intimidation or coercion that interferes with a constitutional or statutory right." Venegas v. Cnty. of L.A., 11 Cal. Rptr. 3d 692, 707 (2004) ("Venegas II"). The word "interferes" as used in the statute means "violates." Austin B. v. Escondido Union School Dist., 57 Cal. Rptr. 3d 454, 472 (Ct. App. 2007).

Plaintiff does not identify a right under California law separate from the rights under the Fourth Amendment of the United States Constitution that Defendant allegedly violated; therefore, Plaintiff's claim under Section 52.1 depends on the merits of her § 1983 claims. See Reynolds v. Cnty. of San Diego, 84 F.3d 1162, 1170-71 (9th Cir. 1996) (dismissing section 52.1 cause of action where there was no violation of the federal Constitution and plaintiff did not allege violation of the state Constitution separate and distinct from federal rights), *overruled on other grounds*, Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997); Venegas IV, 153 Cal. App. 4th at 1239-40 (where plaintiffs alleged no state constitutional right separate and distinct from federal rights, and where the defendant officers' initial detention and questioning of the plaintiffs and the search and impounding of the plaintiffs' car did not violate plaintiffs' rights under the federal Constitution, those acts by defendants necessarily did not violate their rights under the California Constitution).

Because Plaintiff has not shown that Defendants violated any right under the federal Constitution, "there is no conduct upon which to base a claim for liability under 52.1." Reynolds, 84 F.3d at 1170-71. Accordingly, the Court **GRANTS** the County Defendants' motion for summary judgment on Plaintiff's claim under Section 52.1 of the California Civil Code.

## **CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the summary judgment motion of Michelle Craig and the County of San Diego. The Court finds:

1. The Court finds that Defendant Craig is entitled to qualified immunity on Plaintiff's § 1983 claims for omitting information from the affidavit for a search warrant, excessive force, and

wrongful arrest.  Therefore, the Court **GRANTS** Defendants' motion for summary judgment on those claims as to the County of San Diego;

2.   The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's wrongful prosecution claim under § 1983;

3.   The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's false arrest under California law; and

4.   The Court **GRANTS** Defendants' motion for summary judgment on Plaintiff's claim under California Civil Code § 52.1.

**IT IS SO ORDERED.**

**DATED:** 3/4/11

IRMA E. GONZALEZ, Chief Judge
United States District Court